# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:23-cv-141-RJC
# 3:21-cr-235-RJC-DCK-1

| | |
|---|---|
| ETHAN NAZJAY LURRY, | )<br>)<br>) |
| Petitioner, | )<br>) |
| vs. | )<br>)   ORDER<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Respondent. | )<br>) |

**THIS MATTER** is before the Court on Petitioner's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1].

    **I.**    **BACKGROUND**

Petitioner was charged in the underlying criminal case with: possession with intent to distribute 28 grams or more of a mixture and substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One); possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, the § 841 offense charged in Count One, in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three). [3:21-cr-235 ("CR") Doc. 1].

Petitioner pleaded guilty to Counts Two and Three pursuant to a written Plea Agreement in exchange for the United States' agreement to dismiss Count One. [CR Doc. 12 at ¶¶ 1, 2]. Petitioner admitted that he is, in fact, guilty as charged in Counts Two and Three. [Id. at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges.…" [Id. at ¶ 4]. The Plea Agreement explains Count Two is punishable by a minimum term of five years' imprisonment and

a maximum term of life imprisonment, consecutive to any other term of imprisonment; and that Count Three is punishable by a maximum of 10 years' imprisonment, but if the Petitioner has three previous convictions for a violent felony or serious drug offense, the minimum term of imprisonment is 15 years, and the maximum is life. [Id. at ¶ 5].

The parties agreed to jointly recommend that Petitioner's plea is timely for purposes of acceptance of responsibility, if applicable. [Id.]. The Plea Agreement provides that the career offender (U.S.S.G. § 4B1.1) or the armed career criminal (U.S.S.G. § 4B1.4) provision of the U.S. Sentencing Guidelines may be used in determining the sentence, if applicable. [Id. at ¶ 8]. The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level, and to seek a departure or variance from the applicable guideline range. [Id.]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines in determining the sentence; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant

Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 16]. Petitioner expressly waived the right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶ 17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 23].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about September 3, 2021, in Gaston County, within the Western District of North Carolina, and elsewhere, the defendant ETHAN NAZJAY LURRY, did knowingly possess in furtherance of a drug trafficking crime, that is, possession with intent to distribute a controlled substance, a violation of Title 21, United States Code, Section 841, as charged in Count One of the Bill of Indictment, for which he may be prosecuted in a court of the United States, one or more firearms, all in violation of Title 18, United States Code, Section 924(c). [Count Two in the Bill of Indictment].
>
> On or about September 3, 2021, in Gaston County, within the Western District of North Carolina, and elsewhere, the Defendant, ETHAN NAZJAY LURRY, knowing that the had previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce, one or more firearms, that is, one Glock,

model 19, 9mm handgun, all in violation of Title 18, United States Code, Section 922(g)(1). [Count Three of the Bill of Indictment].

[CR Doc. 11 at 1-2] (paragraph numbers omitted).

On November 3, 2021, a Rule 11 hearing came before a United States Magistrate Judge. [CR Doc. 33]. Petitioner stated under oath that he had seen a copy of the Indictment, discussed it with counsel, and fully understood the charges and the maximum and minimum penalties that could apply to him. [Id. at 3-5]. He admitted that he is, in fact, guilty of Counts Two and Three. [Id. at 7]. Petitioner acknowledged the rights he was waiving by pleading guilty, and he agreed that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 5-10]. Petitioner expressed satisfaction with counsel and had enough time to discuss with his attorney any possible defenses that he may have to the charges. [Id. at 10-11].

Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 9-10]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 10]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. [Id.]. Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id. at 10-11].

4

The Presentence Investigation Report (PSR) sets forth the facts from the Factual Basis. [CR Doc. 25 at ¶¶ 8-9]. It also contains a Statement of Relevant Conduct that sets forth additional facts including the following:

> On September 3, 2021, law enforcement observed a vehicle matching the description, including partial license plate number, for the suspect in [a] shooting. During the traffic stop, Defendant LURRY, who was alone in the vehicle, exited the vehicle leaving the driver's side opened. LURRY was wearing blue surgical gloves, and he had an ankle monitor on his right leg. Law enforcement could see in plain sight a weapon magazine and firearm on the floorboard and under the seat where LURRY was sitting, which turned out to be a loaded Glock, model 19, 9mm handgun. They also smelled marijuana and found some in his pocket, after LURRY consented to the search of his person, along with a wad of $2,530 in cash. LURRY admitted he had no concealed carry permit, so law enforcement arrested him for that violation and searched the vehicle incident to arrest. During the search, they found approximately 70 grams of crack cocaine, which has field tested positive, inside of a bag that LURRY had on his chest when he had exited the vehicle….
>
> … [T]he firearm was manufactured outside the State of North Carolina and, thus, traveled in and affected interstate commerce. As mentioned above, Defendant LURRY knew he has been previously convicted of Possession of Firearm by Felon, so he knew he was prohibited from possessing firearms.

[Id. at ¶¶ 11-13].

The term of imprisonment for Count Two is dictated by statute. [Id. at ¶ 18]. The PSR scored the base offense level for Count Three as 20 because the offense is a violation of § 922(g)(1). [Id. at ¶ 19]. A four-level increase applies because Petitioner possessed the firearm in connection with another felony offense (Count One), however, the increase is not applied because Petitioner is also convicted of possession of a firearm in furtherance of drug trafficking, pursuant to U.S. Sentencing Guidelines § 2K2.1(b)(6)(B). [Id. at ¶ 20]. Applying the cross-reference in U.S. Sentencing Guidelines § 2K2.1(c)(1)(A), the base offense level is 24 because Petitioner possessed the firearm in connection with possession with intent to distribute approximately 70 grams of cocaine base (Count One), pursuant to § 2D1.1. [Id. at 21]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 21. [Id. at ¶¶ 27-29]. Petitioner

5

had eight criminal history points, and two points were added because Petitioner committed the instant offense while he was under a criminal justice sentence. [Id. ¶¶ 36, 37]. This resulted in 10 criminal history points and a criminal history category of V. [Id. at ¶ 38]. The resulting advisory guideline range was between 70 and 87 months' imprisonment for Count Three, and the mandatory consecutive term of imprisonment required by statute for Count Two. [Id. at ¶¶ 67-68].

A sentencing hearing was held on July 19, 2022. [CR Doc. 32]. At that time, no objections to the PSR were outstanding. [Id. at 3]. Petitioner stated that he had the opportunity to read the PSR, understood it, and had enough time to discuss it with counsel. [Id. at 2-3]. Petitioner apologized for his crimes and "fully [took] responsibility for [his] actions." [Id. at 9]. Counsel moved for a downward variance because of factors including Petitioner's age, family, and support system, and his efforts to obtain a high school diploma while in custody. [Id. at 5]. The United States requested a guideline sentence. [Id. at 14-15]. The Court found that a downward variance sentence was not warranted due to factors including the nature and circumstances of the offense, and Petitioner's serious criminal history. [Id. at 16-18]. It accordingly sentenced Petitioner to 70 months for Count Three and 60 months, consecutive for Count Two, for a total terms of 130 months' imprisonment. [Id. at 18]. The Judgment was entered on July 21, 2022. [CR Doc. 29] (Judgment). Petitioner did not appeal.

Petitioner filed the instant pro se § 2255 Motion to Vacate on February 26, 2023 . [Doc. 1]. He appears to argue that (renumbered and restated): (1) his guilty plea was not knowing and voluntary because: the Court failed to inform him of the elements of the § 924(c) and § 922(g) offenses during the plea colloquy, and the Court failed to conduct an adequate colloquy pursuant to Rule 11; (2) Petitioner's Fourth Amendment rights were violated when he was pulled over and searched without a warrant; and (3) counsel was ineffective for failing to object to these errors,

6

and for failing to move to suppress evidence. He seeks the vacatur of his sentence and immediate release. [Id. at 13]. The United States filed a Response arguing that: the challenge to his guilty plea are procedurally defaulted; the knowing and voluntary guilty plea waived his right to challenge his conviction and sentence; the Fourth Amendment claims are not cognizable on direct appeal; and the claims of ineffective assistance of counsel lack merit. [Doc. 3]. Petitioner filed a Reply arguing that: his claims are procedurally defaulted because appellate counsel was ineffective for failing to raise them on direct appeal; the errors of which he complains are structural errors that resulted in fundamental unfairness; and counsel performed ineffectively by, *inter alia*, failing to show him the Indictment and make sure he understood his plea. [Doc. 5]. Accordingly, this matter is ripe.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION[1]

---

[1] The claims have been liberally construed, restated and renumbered. Any subclaim or argument that is not specifically discussed has been considered and rejected.

1. **Involuntary Plea**

First, Petitioner contends that his guilty plea was involuntary because the Court did not explain: "the nature of how [Petitioner] committed a § 924(c) offense" [Doc. 1-1 at 5]; or the "interstate or foreign commerce" element of the § 922(g) offense [id. at 7].

As the Supreme Court has recognized, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation and internal quotation marks omitted). Thus, in order to collaterally attack a conviction or sentence based upon errors that could have been pursued on direct appeal, a petitioner must show either (1) "cause" and "actual prejudice" resulting from the errors complained of, or (2) that she is "actually innocent." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Murray v. Carrier, 477 U.S. 478, 488 (1986); Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish actual innocence, the Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." United States v. Courtade, 929 F.3d 186, 191 (4th Cir. 2019) (quoting Bousley, 523 U.S. at 623), as amended (July 10, 2019), *cert. denied,* No. 19-428, 2020 WL 129578 (U.S. Jan. 13, 2020). In the context of procedural default, the term "actual innocence" refers to "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Petitioner acknowledges that he procedurally defaulted these claims by failing to raise them on direct appeal. [Doc. 5 at 1]. It appears that Petitioner is attempting to argue that this procedural

default is excused by ineffective assistance of appellate counsel, structural error, and actual innocence.

Petitioner's bare assertion that appellate counsel failed to raise these claims on direct appeal is too vague and conclusory to establish ineffective assistance of counsel. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the district court). Nor has Petitioner demonstrated that the involuntary plea arguments had a reasonable probability of success had counsel raised them on direct appeal. Indeed, these claims are conclusively refuted by the record such that appellate counsel was not deficient for failing to raise them and, had counsel done so, they would have been rejected for the reasons discussed *infra*. See Mikalajunas, 186 F.3d at 493 (conduct by counsel that is not constitutionally defective cannot serve as cause and prejudice to excuse procedural default).

Petitioner also appears to argue that the Court should disregard his procedural default of these claims because the alleged errors were structural. Structural errors are errors that affect the "entire conduct of the [proceeding] from beginning to end." Greer v. United States, 141 S.Ct. 2090 (2021) (quoting Arizona v. Fulminante, 499 U.S. 279, 309 (1991)). The "highly exceptional" category of structural errors includes, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." United States v. Davila, 569 U.S. 597, 611 (2013). By contrast, "discrete defects in the criminal process," such as the omission of a Rule 11 warning from a plea colloquy is not structural because it does not "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Greer, 141 S.Ct. at 2100 (quoting Neder v. United States, 527 U.S. 1, 9 (1999) (omission of element from jury instructions

9

does not necessarily render a criminal trial fundamentally unfair)); see United States v. Dominguez Benitez, 542 U.S. 74, 81, n. 6 (2004) (the omission of a Rule 11 warning is not colorably structural).

Here, the alleged deficiencies in the plea colloquy that the Petitioner has identified are claims of ordinary, rather than structural, error. See, e.g., Greer, 141 S.Ct. at 2100 (Rehaif[2] errors are not structural and are subject to ordinary plain error review); Dominguez Benitez, 542 U.S. at 81. The Plaintiff's argument that structural errors exempted him from the procedural default bar is, therefore, rejected.[3]

To the extent that the Petitioner suggests that the actual innocence exception applies, this too fails. Petitioner voluntarily pleaded guilty to violating §§ 924(c) and 922(g)(1) by: knowingly possessing a firearm in furtherance of a drug trafficking crime (the § 841 offense charged in Count One); and knowingly possessing, "in and affecting interstate commerce," a firearm while knowing that he was previously convicted of a felony. [CR Doc. 11 at 1-2]. Petitioner's plea to violating § 924(c) is adequately specific because it provides that the underlying drug trafficking offense is the § 841 violation charged in Count One. His present suggestion that his § 924(c) conviction is invalid because Count One was dismissed is based on a faulty legal premise. See United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997) ("a defendant's conviction under § 924(c)(1) doesn't depend on his being convicted – either previously or contemporaneously – of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt");

---

[2] Rehaif v. United States, 139 S.Ct. 2191 (2019).

[3] Because the Petitioner has failed to present any structural error, the Court need not determine whether such would necessarily excuse him from the procedural default bar. See McCauley v. United States, No. 1:13-cr-423-1, 2020 WL 5881270, at *7–8 (M.D.N.C. Sept. 4, 2020) (finding that, even if a structural error claim satisfies the prejudice requirement, it does not supplant the requirement to show cause; collecting cases), *report and recommendation adopted*, No. 1:13CR423, 2020 WL 5821074 (M.D.N.C. Sept. 30, 2020).

United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002) (holding that "§ 924(c) convictions do not require a conviction on the predicate drug trafficking offense" as long as there is "at least some showing by the government that a reasonable jury could have convicted on the predicate drug offense."). Here, the Plaintiff admitted that he possessed a firearm in furtherance of the § 841 offense charged in Count One. This was is sufficient to satisfy the Court that the Petitioner violated § 924(c), regardless of Count One's dismissal. See generally United States v. Carr, 271 F.3d 172, 178 n.6 (4th Cir. 2001) (the district court must assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty); United States v. Crawley, 2 F.4th 257 (4th Cir. 2021) (defendant's admission that he and his codefendants attempted to steal half a kilogram of cocaine was enough to sustain his guilty plea to violating § 924(c) predicated on a drug trafficking crime).

Petitioner also pleaded guilty to violating § 922(g)(1). His admission that the offense occurred in and affecting interstate commerce was sufficient to satisfy Rule 11; Petitioner's knowledge that the firearm had traveled in interstate or foreign commerce is not required. See Carr, 271 F.3d at 178 n.6; Rehaif, 139 S.Ct. at 2196 (acknowledging that "[n]o one here claims that the word 'knowingly' modifies the [§ 922(g)] jurisdictional element"); United States v. Sweat, 246 F.App'x 213 (4th Cir. 2007) (defendant's stipulation that the firearm was possessed in, and affected interstate commerce was sufficient to support a § 922(g)(1) conviction). Petitioner now conclusively contends that "[t]he firearm never travelled in interstate or foreign commerce." [Doc. 1-1 at 7]. However, he has not come forward with any evidence to this effect and this claim is refuted by the record including his sworn admissions to the contrary. See [CR Doc. 33 at 7]; [CR Doc. 11 at 1-2]; [CR Doc. 25 at ¶¶ 9, 13]; see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent

11

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

The Petitioner has not demonstrated that any exception to the procedural default rule applies. Accordingly, his present arguments that the guilty plea was involuntary are procedurally defaulted from § 2255 review and they are dismissed.

Moreover, even if Petitioner's involuntary plea claims were not procedurally defaulted, they would be denied on the merits because the record conclusively establishes that Petitioner's plea was knowingly and voluntarily entered. Petitioner stated at the Rule 11 hearing that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. [CR Doc. 33 at 3-11]. He further stated that he was pleading guilty because he is guilty of Counts Two and Three, that he had fully discussed any possible defenses with counsel, that he was satisfied with counsel's services, and that the plea was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. [Id.]. Petitioner's more specific claims that the Court did not adequately explain the basis for the § 924(c) charge and the interstate commerce nexus for the § 922(g)(1) charge are meritless for the reasons discussed *supra*. His claims that the Court was required to discuss "everything in [his] sentence" at the Rule 11 hearing [Doc. 1-1 at 8], and that the prosecutor somehow misstated facts about the possession of drugs and drug trafficking [id.], are too vague and conclusory to support relief and are refuted by the record of the Rule 11 hearing. See *supra*. The record conclusively establishes that the Court complied with Rule 11, and that Petitioner's

guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences, and an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). Petitioner's present unsupported and self-serving claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

2. **Fourth Amendment Claims**

Petitioner contends that his Fourth Amendment rights were violated when he was pulled over without probable cause, and searched without a warrant. He claims that: an "officer conducted warrantless search because they said I was a suspect for a shooting there was no trustworthy information to conduct this warrantless search;" he was never charged in a shooting; and there was "no specifically described item found during their warrantless search." [Doc. 1-1 at 11].

Once a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion pursuant to § 2255 unless there has been an intervening change in law. See Stone v. Powell, 428 U.S. 465, 494 (1976); Davis v. United States, 417 U.S. 333, 342 (1974); United States v. Schulte, 230 F.3d 1356 (4th Cir. 2000). Here, the Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims at trial and on direct appeal. He has failed to demonstrate that there has been an intervening change of law, and thus, Petitioner cannot now these claims in a § 2255 motion.

Moreover, Petitioner waived his Fourth Amendment claims by pleading guilty. "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417

13

U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Petitioner's Fourth Amendment claims are alleged nonjurisdictional errors that occurred before his plea's entry, and which were waived by his knowing and voluntary plea.

Even if Petitioner's Fourth Amendment claims were considered on the merits, they would be denied. The record demonstrates that law enforcement officers pulled over Petitioner because Petitioner, and the distinctive vehicle he was driving including a partial license plate number, had been implicated in a shooting. [CR Doc. 25 at ¶¶ 11-12]. Officers were justified in pulling over a vehicle that was distinctive and matched the partial license plate number for a vehicle that was suspected in a shooting. See, e.g., United States v. Ghazaryan, 685 F.App'x 222 (4th Cir. 2017) (officer had reasonable suspicion to stop a van where officer observed a van with a license plate number matching an informant's tip near the banks identified by the informant, in a county where officers were aware of recent credit card fraud). That the Petitioner was not ultimately charged in the shooting does not invalidate the stop. See generally Hiibel v. Sixth Jud. Dist. Ct. of Nevada, 542 U.S. 177, 185 (2004) (a stop must be "justified at its inception") (internal quotations and citations omitted). Once the vehicle was stopped, officers observed a weapon magazine and firearm in plain view, for which Petitioner admitted that he did not have a concealed carry permit,[4] and they smelled marijuana. See Kentucky v. King, 563 U.S. 452, 463 (2011) ("law enforcement

---

[4] It was permissible for officers to question Petitioner about the weapon. See generally Florida v. Bostick, 501 U.S. 429, 434 (1991) (in the absence of a seizure, a police-citizen encounter is considered consensual and does not trigger Fourth Amendment scrutiny); Berkemer v. McCarty, 468 U.S. 420 (1984) (persons temporarily detained during traffic stops are not "in custody" for purposes of Miranda); United States v. Buzzard, 1 F.4th 198 (4th Cir. 2021) (questions within the scope of a traffic stop and relating to officer safety do not violate the Fourth Amendment). Further, even if Petitioner had not admitted that he lacked a concealed carry permit, the presence of an ankle monitor on the Petitioner reasonably signaled to officers that he was not authorized to possess a firearm.

offices may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made"). Petitioner consented to a search of his person, which resulted in officers finding marijuana and a large amount of cash in his pocket. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (if an individual consents to a search, probable cause is unnecessary). Officers' search of the vehicle was also valid because it was incident to Petitioner's lawful arrest for the firearm possession, and based on the smell of marijuana; this resulted in officers finding crack cocaine. Arizona v. Gant, 556 U.S. 332, 344 (2009) ("circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'") (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)); United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002) (holding that an officer detecting the smell of marijuana from a properly stopped vehicle has probable cause to search the vehicle for illegal substances). The traffic stop and officers' discovery of a firearm, cash, and drugs all complied with the Fourth Amendment. Petitioner's present conclusory Fourth Amendment challenges are refuted by the record and would fail on the merits if they were properly presented.

### 3. Ineffective Assistance of Counsel

Finally, Petitioner contends that trial counsel was ineffective for failing to raise the "constitutional error[s]" identified in Claims 1 and 2, *supra*. [Doc. 1-1 at 10].

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland, 466 U.S. at 687-88. The deficiency prong turns on whether "counsel's representation

15

fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee v. United States, 582 U.S. 357, 364-65 (2017) (the question is whether the defendant would have gone to trial, not whether the result

of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Petitioner's claims of error are conclusory, waived, and meritless for the reasons discussed in Sections 1 and 2, *supra*. Therefore, counsel was not deficient for failing to raise them and Petitioner cannot establish prejudice.

Moreover, to the extent that the Petitioner suggests that ineffective assistance of trial counsel rendered his guilty plea involuntary, Petitioner cannot demonstrate a reasonable probability that he would not have pleaded guilty, and would have proceeded to trial, but for counsel's allegedly deficient performance. Petitioner admitted his guilt of Counts Two and Three and agreed that the written Factual Basis accompanying the plea. His present self-serving and conclusory claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Moreover, it would not have been rational for the Petitioner to proceed to trial in light of the strong evidence of his guilt as set forth in the Factual Basis and PSR, and the benefits that Petitioner received by pleading guilty, including the dismissal of Count One and the three-level reduction for acceptance of responsibility. Thus, to the extent that Petitioner argues that he would not have pleaded guilty but for counsel's allegedly deficient performance, this claim is rejected. See, e.g., [Doc. 1-1 at 5, 7] (arguing that he was denied the right to make a knowing and intelligent decision about the § 924(c) charge, and that he "would have never plead guilty" to the § 922(g) charge had he been adequately advised about the interstate nexus element). Accordingly, the Petitioner's claims of ineffective assistance of counsel are dismissed and denied.

**IV.  CONCLUSION**

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED and DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: July 25, 2023

Robert J. Conrad, Jr.
United States District Judge